**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,**

v.

**ILLINOIS STATE TOLLWAY AUTHORITY, Defendant-Appellee.**

No. 85–1736.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1986.

Decided Sept. 3, 1986.

Colleen M. O'Connor, E.E.O.C., Washington, D.C., for plaintiff-appellant.

Tanya K. Dietrich, Sp. Asst. Atty. Gen., Illinois State Toll Highway, Oak Brook, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

CUMMINGS, Chief Judge.

The Equal Employment Opportunity Commission (EEOC) appeals from a district court order denying enforcement of administrative subpoenas issued to the Illinois State Tollway Authority pursuant to § 710, Civil Rights Act of 1964 tit. VII, as amended, 42 U.S.C. 2000e–9.

In early 1983, Zorene Scheleski filed charges with the EEOC alleging that the Tollway Authority had discriminated against her on the basis of religion and then terminated her in retaliation for having filed a religion discrimination charge. Notices of the charges were served on the Tollway Authority. The EEOC's requests for documents and interviews with employees were ignored. The EEOC then served subpoenas duces tecum on the Tollway Authority, which refused to comply.

On December 28, 1984, the EEOC filed an application for an Order to Show Cause why the subpoenas should not be enforced in the district court and served a copy on the Tollway Authority. The Tollway Authority filed a special limited appearance on January 10, 1985, to argue that there was no personal jurisdiction. The Tollway Authority also argued that only the United States Attorney General could bring a Title VII action in court against a state agency. The district court granted the motion to dismiss. Upon motion for reconsideration, the court entered a Memorandum Opinion and Order denying that motion.[1] In this opinion the court held that it lacked jurisdiction because under § 706(f)(1), 42 U.S.C. 2000e–5(f)(1), only the Attorney General could bring a civil action against a state agency. We reverse.

---

1. In its February 28, 1985, Memorandum Opinion the district court denied the EEOC's motion for reconsideration on three bases. First, the court reiterated its earlier holding that there was no personal jurisdiction over the Tollway Authority without a properly filed summons and complaint. Second, the court concluded that the subpoena enforcement procedures of § 710 of Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e–9) (incorporating § 161 of the National Labor Relations Act (NLRA)) were not applicable because the NLRA specifically exempts state and local governments, citing 29 U.S.C. § 152(2). Finally the district court held that the EEOC had no power to bring the subpoena enforcement action because only the Attorney General could bring a civil action against a state agency.

## I

■ The issue is whether the EEOC has the authority to seek court enforcement of subpoenas directed to a state agency.[2] We hold that it does. Generally, an EEOC subpoena must be enforced where (1) the investigation is within the agency's authority, (2) the subpoena is not too indefinite, and (3) the requested information is reasonably relevant. *EEOC v. A.E. Staley Mfg. Co.,* 711 F.2d 780, 783 (7th Cir.1983). The district courts have routinely enforced EEOC investigative subpoenas against state agencies. See *e.g., Nueces County Hosp. Dist. v. EEOC,* 518 F.2d 895 (5th Cir.1975); *EEOC v. University of New Mexico,* 504 F.2d 1296 (10th Cir.1974). This is evidently the first case where the authority of the EEOC to enforce its own subpoenas has been questioned. The district court ruled that only the Attorney General may seek court enforcement of an EEOC subpoena because under § 706(f)(1) of Title VII only the Attorney General may bring a "civil action" against a governmental enti-

ty. In order to determine the appropriate division of power between the EEOC and the Attorney General under Title VII an examination of Title VII's language and history is necessary.

First, the procedures of Title VII that the EEOC must follow when investigating a charge of workplace discrimination will be examined. The EEOC is empowered by § 706(b) to investigate all charges of discrimination. 42 U.S.C. § 2000e–5(b).[3] Section 709(a) gives the EEOC the right of access to records of those persons under investigation. 42 U.S.C. § 2000e–8(a).[4] Section 710 secures that right by setting out the power (and procedures) to enforce subpoenas. *Id.* at § 2000e–9 (incorporating § 11 of NLRA, 29 U.S.C. § 161).[5] If, after an investigation, the EEOC decides that there is reasonable cause to believe that discrimination exists, the EEOC is authorized to attempt informal discussions aimed at eliminating the discriminatory practices. These provisions all relate to the pre-lawsuit stage of investigation and conciliation. At this point there is no mention of the

2. Defendant on appeal has apparently abandoned its argument that a complaint has to be filed before it can be brought into district court. This seems to be a wise decision since § 710 of Title VII (incorporating § 11 of NLRA, 29 U.S.C. § 161(2)) specifies that EEOC need only file an application for enforcement in the district court. *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 308–309 (7th Cir.1981).

Likewise, the Tollway Authority decided not to pursue the argument that § 152(2) of the NLRA, which excludes states and political subdivisions in its definition of "employer," applies to Title VII EEOC enforcement actions. Section 710 incorporates *only* the enforcement procedure provision of the NLRA found in 29 U.S.C. § 161, which sets out subpoena enforcement powers and procedures, not § 152(2). Furthermore, § 710 and § 161 both refer to "person", not "employer." Title VII's definitional provision, § 710(a), defines "person" (see 29 U.S.C. § 161(1)) to include governments, government agencies, and political subdivisions. Thus the EEOC is empowered to enforce subpoenas against state agencies.

3. Section 706(b) of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. 2000e–5(b), provides in relevant part:

Whenever a charge is filed ... the Commission ... shall make an investigation thereof.... If the Commission determines after

such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge.... If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion....

4. Section 709(a) of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. 2000e–8(a), provides:

In connection with any investigation of a charge filed under section 706, the Commission or its designated representatives shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this title and is relevant to the charge under investigation.

5. Section 710 of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. 2000e–9, provides:

For the purposes of all hearings and investigations conducted by the Commission or its duly authorized agents or agencies, section 11 of the National Labor Relations Act (49 Stat. 455; 29 U.S.C. 161) shall apply.

Attorney General. Likewise the EEOC's power of investigation and conciliation is not limited in any way—this power still extends to all persons against whom a charge is brought. At this step only the EEOC is involved on the way to (and in the hope of averting) a Title VII lawsuit.

Section 706 continues, next authorizing the EEOC (once conciliation efforts have failed) to "bring a civil action against any respondent not a government, governmental agency, or political subdivision." 42 U.S.C. § 2000e–5(f)(1).[6] However, if the civil action is against a government respondent, then the EEOC is to "refer the case to the Attorney General who may bring a civil action." *Id.* This is the first time the Attorney General is mentioned and the first time the EEOC is restricted in its general power to investigate charges, attempt conciliation, and enforce Title VII. This restriction, by operation of the statute, occurs only at the litigation stage of Title VII proceedings. In the pre-litigation stage, Congress has given unrestricted investigative power to the EEOC. Once litigation is imminent, however, Congress turns over the enforcement power to the Attorney General for cases involving governmental entities. A brief review of the legislative history sheds light on why Congress made this distinction.

In 1972 Congress amended § 701 to include state and local agencies. Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (amending 42 U.S.C. § 2000e). Congress made it clear that in enacting the bill the EEOC was to refer a case against a governmental entity to the Attorney General only after first having an opportunity to complete an investigation and work out a resolution. 118 Cong.Rec. 7166, 7167–7168, reprinted in *Legislative History of the Equal Employment Opportunity Act of 1972*, 92d Cong., 2d Sess. at 1847. Additionally, Congress contemplated that the bill would allow the Attorney General to litigate contested cases against the government in the federal district courts if the EEOC was unsuccessful in obtaining conciliation. *Id.* at 647; BNA at 130. Congress could accomplish several objectives by having the Attorney General initiate the lawsuits. First, it would allow state and local governments to lead the way in encouraging equal employment opportunity through informal and voluntary procedures. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147; S.Rep. No. 92–415, 2d Cong., 1st Sess. (1971), *reprinted in* Bureau of National Affairs (BNA), *The Equal Employment Opportunity Act of 1972*, at 249 (1973). Second, by placing a cabinet-level head behind the lawsuit, Title VII enforcement would be more effective and reduce friction between State and Federal governmental agencies. *Legislative History* at 623–624, 398, 1749; BNA at 249. The next step is to analyze defendant's argument in light of the statute's language, purpose, and history.

The Tollway Authority argues that the clear language of § 706(f) requires the Attorney General, not the EEOC, to litigate all "civil actions" against state and local governments. A petition to enforce a subpoena is "civil" and an "action" before a court; therefore defendant submits that under Title VII the Attorney General must seek court enforcement of all subpoenas against state and local governments. At first blush the argument, though perhaps hypertechnical, is persuasive. The term "civil action" is not defined in Title VII. Webster's New International Dictionary (2d ed. unabridged) defines civil action as: "An action, suit, or proceeding to enforce

---

**6.** Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. 2000e–5(f)(1), provides in relevant part:

> If ... the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action, and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court....

the private rights or redress the private wrongs of an individual, that is, one not involving a criminal proceeding." Civil action is a broad term and certainly court enforcement of a subpoena would fall within this definition. But such a construction would be inapposite both to the purposes of having the EEOC control the investigatory stage and the Attorney General perform the adjudicatory role.

Within Title VII's enforcement framework Congress specifically gave the EEOC the authority to investigate charges and negotiate resolutions. To that end Congress also gave it authority to subpoena records and other relevant evidence. To effectuate that authority, Congress provided a means of enforcing subpoenas in court. All of these steps are essential to perform its function as investigator and also to determine whether any action is necessary and, if so, the facts upon which to negotiate an acceptable agreement. To require instead that the Attorney General step in during an investigation whenever a state refuses to cooperate with an EEOC subpoena is simply nonsensical.

The language of the statute is not inconsistent with our interpretation. Congress uses the term "civil action" in specific reference to a lawsuit in order to enforce Title VII, *i.e.* bringing a suit on the merits. To allow the EEOC the power of subpoena enforcement will not in any way hinder the Attorney General's authority and discretion in suing state and local governments for violations of Title VII.[7]

We hold that under §§ 706 and 710 of Title VII the EEOC has the authority to enforce its investigative subpoenas against state and local government agencies. Therefore the order of the district court denying enforcement of the EEOC subpoenas is reversed and the cause remanded to the district court to reach the merits of whether the subpoenas should be enforced. Circuit Rule 18 shall apply.

---

7. The Tollway Authority argues that unless the Attorney General oversees enforcement of subpoenas they will become tools for harassment by the EEOC. The Tollway Authority also asserts that it does not intend to do any conciliating; therefore further investigation would be useless, a waste of both the EEOC's and Tollway Authority's time and resources (because eventually the case will have to be referred to the Attorney General anyway). This argument is meritless. First, it ignores the reason for the EEOC investigation, which is to gather facts to determine (1) if there is reason to believe that discrimination has occurred; (2) an appropriate basis for negotiation positions; (3) whether a suit should be filed (if conciliation fails); and (4) what claims should be pursued in litigation. See generally *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir.1976). Second, such a position would allow the state agency, by being obstinate, to circumvent the entire framework of administrative investigation established by Congress. If the Tollway Authority feels that because of the circumstances, the subpoenas should not be enforced, it can fight the merits of the subpoenas in district court. See *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 783 (7th Cir.1983), certiorari denied, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456; *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 310 (7th Cir.1981).